(No. 90-CV-0367—)

*In re* APPLICATION OF BIRDIE DRAKE

*Opinion filed October 19, 1993.*
*Opinion filed November 7, 1994.*

BRICK, GENTRY, BOWERS, SWARTZ, STOLTZE, SCHULING & LEVIS (THOMAS J. LEVIS, of counsel) and WILDMAN, HARROLD, ALLEN & DIXON (LOUIS P. VITULLO and RICHARD P. GLOVKA, of counsel), for Claimant.

NEIL F. HARTIGAN and ROLAND W. BURRIS, Attorneys General (JAMES MAHER and PAUL H. CHO, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

PER CURIAM

This claim arises out of an incident that occurred on August 7, 1989. The Claimant, Birdie Drake, mother of the victim, Ray A. Drake, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. 740 ILCS 45/1, *et seq.*

This Court has carefully considered the application for benefits submitted on September 19, 1989, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based

upon these documents and other evidence submitted to the Court, the Court finds:

(1) That on August 7, 1989, the Claimant's son, Ray A. Drake, age 20, was a victim of a violent crime as defined in section 2(c) of the Act, to wit: aggravated battery.

(2) That the crime occurred in Maywood, Illinois, and all of the eligibility requirements of section 6.1 of the Act have been met.

(3) That the victim is permanently disabled as a result of the incident and is confined to a wheelchair.

(4) That the Claimant seeks compensation on behalf of the victim for wheelchair accessories and for adaptions/additions to her residence for wheelchair accessibility.

(5) That the expenses for which Claimant seeks compensation are not specifically enumerated as a pecuniary loss under section 2(h) of the Act.

(6) That section 10.1 of the Act states that a victim may be compensated for his pecuniary loss.

(7) That the wheelchair accessories may possibly be considered prosthetic appliances pursuant to section 2(h) of the Act, but the Court is not advised as to the amount of or nature of the accessories and requires such information to substantiate the claim.

(8) That Claimant has indicated that she may incur medical/hospital expenses in the future as a result of the incident. Should the Claimant incur these expenses, she may petition the Court to reopen consideration of this claim for additional compensation, pursuant to section 16 of the Act.

(9) That this is a case of first impression in this Court as to adaptions of a residence.

(10) That the Court has consistently strictly construed the Act.

(11) That the Court invites the Claimant to properly substantiate the wheelchair accessories portion of the claim for the Court and to request a trial so that the full Court can consider these issues.

It is therefore ordered that this claim is denied.

## OPINION

FREDERICK, J.

This claim arises out of a violent crime that was committed on August 7, 1989. The victim, Ray A. Drake, was 20 years of age at the time of the incident. The Claimant, Birdie Drake, is the victim's mother and is seeking compensation pursuant to the Crime Victims Compensation Act (hereinafter the "Act"). 740 ILCS 45/1, *et seq.*

Claimant, a resident of the State of Iowa, has made an application for a total of $22,348.80 in compensation for two major expenditures incurred on behalf of the victim. Claimant seeks: (a) the sum of $19,000 for remodeling and structural adaptions made to the house owned by her and her husband, Earl Drake; and (b) the sum of $3,348.80 for the installation of a wheelchair lift and strap-down accessories for a 1978 van owned by her and her husband.

### Procedural Background

The office of the Attorney General filed an investigatory report with the Court, recommending payment of the sums requested. Paragraph 6 of the recommendation states that the expenses incurred are not specifically enumerated as a pecuniary loss under section 2 of the Act. The paragraph supports the recommendation by concluding

that the expenses were incurred directly as a result of the victim's injuries and are necessary for the victim's welfare.

On October 19, 1993, the Court issued an opinion finding that Ray A. Drake was a victim of a violent crime, but denied the claim. The Court stated that it has consistently strictly construed the Act and the expenses are not specifically enumerated as a pecuniary loss in section 2(h) of the Act, pars. 5 and 10 of opinion. The Court indicated that wheelchair accessories may possibly be considered prosthetic appliances pursuant to section 2(h) but no information was available in regard to the amount of, or nature of, the accessories, par. 7 of opinion. The Court found the case to be one of the first impression and invited the Claimant to request a trial to enable the Court to consider these issues.

Claimant filed a six-page request for hearing, together with four exhibits, detailing the basis of her claim. A hearing was conducted on October 14, 1994, at which Claimant appeared and testified. Claimant was represented by her counsel from the State of Iowa and two co-counsel from the State of Illinois. Claimant presented four exhibits and all four were admitted into the record. The exhibits are as follows:

(a) an affidavit by Deb Mau, social worker at Des Moines General Hospital. Claimant's Exhibit No. 1;

(b) an affidavit by Daniel Bruflodt, social worker at Younker Rehabilitation Center in Des Moines. Claimant's Exhibit No. 2;

(c) an affidavit by Charles W. Ruperto, owner of Complete Line Remodeling, Inc. Claimant's Exhibit No. 3;

(d) an affidavit by Leonard Stevenson, owner of Thomas Bus Sales of Iowa, Inc. Claimant's Exhibit No. 4.

The office of the Attorney General called David Ubell, deputy chief of the crime victims office, as a witness. At the conclusion of the hearing, the office of the Attorney General recommended that the award not be made because the expenses were not expressly covered by the Act.

Upon request by Claimant, the Commissioner indicated that the record would remain open for one week to allow submission of further documents. Claimant's counsel forwarded four additional exhibits. On October 24, the Commissioner called Mr. Cho, assistant Attorney General, to determine whether he received copies and whether he objected to their admission into the record. Mr. Cho stated that he received the exhibits and did not object to them being made a part of the record. The Court considers the following exhibits as part of the record:

(a) an affidavit by Ronnie Hawkins, M.D., a doctor for Ray Drake. Claimant's Exhibit No. 5;

(b) A copy of the Iowa crime victim's statute. Claimant's Exhibit No. 6;

(c) a copy of the relevant portion of Iowa Policy Index. Claimant's Exhibit No. 7;

(d) a copy of the relevant portions of the Federal Victim Compensation Grant Statute. Claimant's Exhibit No. 8; and

(e) a copy of the decree of foreclosure on the Drake's house. Claimant's Exhibit No. 9.

## Testimony of Claimant

At the hearing, Claimant testified that she resides at 1613 West 12th Street, Des Moines, Iowa. (R. 2.) Her son was going to college in Illinois. On August 7, 1989, he was shot in the head in Maywood, Illinois. After staying at Loyola Hospital for two weeks he was flown to Des Moines General Hospital (hereinafter "DMGH") in Iowa. He was in DMGH for seven to eight months. (R. 8.) Ray Drake is a quadriplegic, and confined to a wheelchair. R. 11.

Deb Mau, the social worker at DMGH, contacted Lisa Smith, of the Illinois Attorney General's office, and was "assured" that Ray Drake had $25,000 available. (R. 8-9.) See Claimant's Exhibit No. 1, par. 4.

Ray Drake was moved from DMGH to Iowa Methodist Medical Center in Des Moines for rehabilitation. Dan Bruflodt, a social worker, contacted Lisa Smith and she "assured" him that the funds were available for Ray Drake. (See Claimant's Exhibit No. 2, par. 11.) The social workers contacted Charles Ruperto to construct adaptions to the Drake's house. Ruperto told Claimant that he had the approval to build the bathroom for Ray Drake. R. 9.

Ruperto "put in a real expensive shower" to protect Ray Drake from changes in water temperature. R. 10.

Claimant talked to Lisa Smith and she told Claimant that the funds were available for both the hydraulic lift on the 1978 van and the adaptations to the house. R. 12 and 17.

At the time of Ray Drake's injury, Claimant was employed at Younker's department store in Des Moines. Her husband, Earl, was retired. (R. 13.) She and her husband do not have the ability to pay Complete Line Remodeling and Thomas Bus Sales. Claimant stated that she would

not have agreed to allow Mr. Ruperto to do the work had the Attorney General's office indicated that there was a chance that she might have to pay for the work by Complete Line Remodeling and Thomas Bus Sales. R. 14-5.

Claimant's house is a two-story structure without bathroom facilities on the main floor or an elevator. (R. 15.) If the bathroom was not added, Claimant stated that her son would be in DMGH or Iowa Methodist. (R. 15-6.) Ray Drake is incapable of caring for himself, and would be hospitalized and incurring medical bills. Without the lift, there would be no other way to transport her son. He needed the lift to travel for additional rehabilitation. (R. 16.) The bathroom and lift were medically required by the doctors. R. 17.

Claimant stated that her house has been foreclosed upon to satisfy the debt owed to Complete Line Remodeling, and an Iowa court has ordered the house sold at a sheriff's sale. (R. 18.) See Claimant's Exhibit No. 9.

On cross-examination, Claimant agreed that no one from Thomas Bus Sales told her that she would not be responsible for payment. She also said that no one from Thomas Bus Sales told her that the responsibility would fall on her if the bill was not paid by the State of Illinois. (R. 22.) Although Claimant agreed that she saw the proposal by Complete Line Remodeling before any work was commenced on her home, she maintained that she was verbally told that the State of Illinois was going to pay the costs. R. 23.

On redirect examination, Claimant stated that she did not participate in the selection of the contractor who did the work on her house. R. 25.

Although Claimant indicated that the work was medically required by doctors, she did not recall the name of

the doctor and stated that she was unaware whether the requirement was put in writing. R. 27.

Claimant signed the contract with Complete Line Remodeling but did not sign the contract with Thomas Bus Lines. R. 27-8.

## Testimony of David Ubell

The office of the Attorney General called David Ubell, assistant division chief of the crime victims division of the Attorney General's office, as a witness. He oversees the daily operations of the division. (R. 36.) He was not aware of Lisa Smith, a claims analyst, making any promises to the Drake family. (R. 38-9.) A claims analyst does not have the authority to promise payment. (R. 40.) He acknowledges that the Drake claim did not meet all of the statutory guidelines, but indicated that the recommendation was made because the Attorney General's office was "moved by their plight." He believed wheelchairs might be considered prosthetic devices. R. 41-2.

Ubell recalled speaking to Deb Mau and telling her the procedures for filing an application. He specifically rejected her statement included in her affidavit (par. 4 of Claimant's Exhibit No. 1), denying that he assured her that up to $25,000 was available to assist the Drakes. (R. 44-5.) He explained to Deb Mau that the role of the Attorney General's office is to make a recommendation and the Court of Claims makes the final decision. (R. 46.) He did not recall having a conversation with Daniel Bruflodt, Charles Ruperto, Leonard Stevenson or anyone from the Drake family. R. 46-7.

Ubell was not aware of any case in which an award was made for making homes handicapped-accessible or for making vans wheelchair-accessible. R. 48.

On cross-examination, Ubell acknowledged that he did not know what Lisa Smith said to the individuals involved. (R. 51.) Although speculative in nature, he agreed that a claims analyst might make promises of awards. (R. 51-2.) Lisa Smith told him that she did not guarantee anything. R. 52.

## Additional Facts

The work performed on the house was to construct a wheelchair-accessible bathroom, widen the door, and build a ramp. (R. 57.) The work included the conversion of a porch into a bathroom and added a special rolling toilet and a scald-proof shower device. Although the first floor dining room was converted into a bedroom, the cost is not included in the claim. (R. 58-9.) The contract does not provide a detailed itemization of cost for labor, supplies or equipment. Claimant's Exhibit no. 2.

The bill for the work on the van does not include the cost of the wheelchair and no claim is made for the wheelchair. (R. 59.) Claimant is not seeking any compensation for medical or hospital bills. R. 60.

The Iowa court acting on the mechanic's lien by Complete Line Remodeling did not question the dollar amount sought and found that $19,000 was owed to the contractor. Neither the contractor nor Thomas Bus Sales filed a lawsuit against anyone other than the Drakes. The Drakes have not filed a lawsuit against anyone. R. 60.

Bids were not sought from any contractor other than Ruperto (Complete Line Remodeling). The hospital staff met with Ruperto and made a determination as to the cost. R. 61.

No bids were sought for work on the van other than the one from Thomas Bus Sales. Des Moines does have

taxi service and a mass transportation district. Claimant's counsel stated that the taxi service did not provide transportation for persons with disabilities, but he did not know whether the mass transit district provided such service. R. 62-3.

Claimant's counsel indicated that the State of Iowa has a Crime Victim Compensation Act. He stated that the Iowa Act provides for the type of compensation which is claimed in this case. He discussed the instant claim with Kelly Brody, director of Iowa Crime Victims Fund, and was told that the claim would not be covered by the Iowa Act. R. 67-8.

## Claimant's Argument

Claimant prayed for compassion. Deb Mau, Dan Bruflodt and Charles Ruperto were assured of payments by Lisa Smith for making the house and van handicapped accessible. (R. 30-2 and 69; see Claimant's exhibits nos. 1, 2 and 3.) Ruperto wrote to Smith indicating that he would not begin work until he was assured of payment. Smith called Ruperto and told him to go ahead. (R. 70.) See Claimant's Exhibit No. 3.

Claimant argues that the work falls within the definition of pecuniary loss because it is a medical necessity for Ray Drake. (R. 70.) See Claimant's Exhibit No. 5.

If the work was not performed, Ray Drake would be in a hospital and the State of Illinois would pay $25,000 for doctor bills. The purpose of the Act is to help victims with medical problems. R. 70-1.

Claimant provided a copy of a document apparently produced by the U.S. Department of Justice in 1991, entitled *Voca Victim Compensation Grant Program Technical Assistance Document*. (Claimant's Exhibit No. 8.)

Claimant highlighted two provisions. The first provision specifies that state crime victim compensation programs must make awards to non-residents on the same basis awards are made to resident victims. (Claimant's Exhibit No. 8, pg. 3.) The second highlighted provision indicates that some states award compensation for expenses that are not required by Federal law including, "building adaption for those disabled by a compensable crime." (Claimant's Exhibit No. 8, pg. 5.) Neither of the provisions impact the statutory interpretation of the Illinois Act.

## Assistant Attorney General's Argument

The assistant Attorney General argues that there was never a contract established between the contractors and the State of Illinois. Dan Bruflodt made all of the arrangements with the contractors. (R. 72.) The question of whether compensation should be paid for making the home and van handicapped accessible should be taken up by the Illinois Legislature and not decided in this proceeding. The assistant Attorney General stated that the Court's decision should be affirmed. R. 74.

## Issues

Neither Claimant or the Attorney General's office filed a memorandum in support of their positions. No cases have been cited in support of either's position.

There are several issues raised by this claim. Although the office of the Attorney General argues that no contract was made between the State of Illinois and the contractors (or the Drakes) that does not appear to be one of the issues. Neither the Drakes or the contractors have filed an action to enforce a contract. Therefore, the issue central to a decision revolves around the interpretation of certain language in the Act.

Section 10.1(a) of the Act provides that, "a victim may be compensated for his pecuniary loss." Pecuniary loss is defined in section 2(h) and includes a wide range of expenses including medical/hospital expenses; prosthetic appliances; paid tuition; and loss of earnings. Prior to addressing whether the expenses are a recoverable pecuniary loss pursuant to section 2(h) of the Act, we point out that there is an issue as to whether Claimant has standing pursuant to the Act to recover any expenses. This issue was not raised in the Attorney General's investigatory report. Ray Drake was 20 years of age and not a minor, under Illinois or Iowa law, at the time of the incident. (R. 65.) (See 755 ILCS 5/11—1.) He was not suffering from any disability prior to the incident. (R. 66.) Although the Crime Victims Compensation application is signed as follows: "Ray A. Drake by Birdie M. Drake (mother)," it lists Birdie Drake as the applicant. In this case the victim is not seeking any compensation. The expenses claimed are expenses apparently incurred or owed by Birdie Drake. Because Birdie Drake is not a victim, as defined by section 2(d) of the Act, the authority for her to recover is provided by section 10.1(c). Section 10.1(c) states that any person related to the victim may be compensated for reasonable funeral, medical, and hospital expenses of the victim to the extent to which he has paid or become obligated to pay such expenses. Subparagraph (c) does not specify recovery for the broader "pecuniary loss" but instead limits recovery to three items: funeral, hospital, and medical expenses.

Claimant argues that the expenses claimed are medically necessary. The affidavit of Dr. Hawkins states that Ray Drake has been and continues to be a patient of his. He states that the handicapped bathroom and the wheelchair lift were "medically necessary in the care and treatment of Ray Drake's post-gunshot condition." (Par. 4 of

Claimant's Exhibit No. 5.) Dr. Hawkins does not state that such adaptions were prescribed by him or any other doctor. There is no statement that such adaptions were made as a condition of Ray Drake's release from any hospital.

A functional analysis may be applied to the issue of whether to compensate for work performed on the house. Regardless of the distinctions made in the analysis below, which are only logical assumptions and are not argued by the Claimant or specifically supported by the record, the expenses for these adaptions to the house are not expressly contained in the definition of pecuniary loss in the Act. Part of the expenses incurred in the remodeling of the residence was to construct a bathroom on the first floor, where one did not previously exist, including the cost of the special rolling toilet and the scald-proof shower. The other portion of the expenses is for the construction of a ramp and the widening of the door. Both expenses appear to make the quadriplegic's life, and the family's, more convenient. The record does not reflect whether these expenses enable the victim to become more self sufficient. The ramp and widened doorway presumptively allow the victim to have ingress and egress to his residence, which may be important on the issue of his safety in cases of an emergency and potentially help make the victim more self sufficient.

The expenses incurred in the installation of a wheelchair lift and strap-down accessories for the van are not specifically included in the Act. The work performed assumptively makes transportation more convenient for Ray Drake and his family, but it does not make him more self sufficient.

In the event the work was not performed, the record does not indicate that Ray Drake would be deprived of a

shower, bathroom facilities, shelter or transportation. The lack of statutory authority supports a denial of the claim by the victim's mother because the work performed is not a funeral, medical or hospital expense. The Act does not allow compensation for expenses that are "medically necessary." Claimant's counsel expressly stated that Claimant was not seeking medical or hospital expenses. (R. 60.)

If Claimant had standing to claim "pecuniary loss" pursuant to this application, then a determination whether this Claimant qualifies should be made. Section 2(h) of the Act authorizes victims to receive compensation for prosthetic appliances. It is not clear whether any of the adaptions or accessories could be considered a prosthetic appliance. The general definition of prosthetic, or prosthesis, is the replacement of a missing part of the body, such as a limb, eye, or tooth by artificial substitute (*Webster's New World Dictionary*), or a fabricated substitute for a diseased or missing part of the body (*Stedman's Medical Dictionary*).

The Court's opinion raised the issue of whether wheelchair accessories qualify as prosthetic appliances. The contract provides limited detail on what accessories were provided. It appears that a total net cost of $250 was charged for "Aeroquip 4 point tie down" and "Cam lock tie down and labor." ($400 in charges minus a credit of $150 for a net charge of $250.)

Strictly construing the Act, we conclude that no compensation should be awarded. None of the work performed involved the replacement of any limb, eye, tooth or other body part. We cannot find that the items for which compensation is sought are prosthetic appliances. Not only would such a construction make it extremely difficult to draw the line in this and future cases, we find that consideration of such an expansion of the coverage of

the Act should only be undertaken by the General Assembly.

It is clear that Claimant is not eligible for compensation pursuant to the Act. Although counsel for Claimant has indicated that Claimant would not be eligible for compensation under the Iowa Act, that question is not clear. Section 912.5(4) of the Iowa Act specifies that an Iowa resident injured in another state may file for compensation in Iowa if the other state, "does not have an eligible crime victim compensation program as such is defined in the Federal Victims of Crime Act of 1984." Illinois has such a program, but its program does not allow compensation for these expenses. Apparently, the Iowa Act has been interpreted to allow recovery for these expenses. (Claimant's Exhibit No. 6.) The Iowa Act does not specifically state that adaptions to a house or a van are compensable, but the Iowa policy index provided by Claimant's counsel would appear to allow compensation for expenses incurred for work performed which is medically necessary equipment and property alterations. The language is as follows:

"The program will pay for 'medically necessary' equipment and property alteration which is prescribed by the victim's physician. Medically necessary is defined as items necessary to facilitate the physical recovery and well-being of the victim. Reimbursement is allowed for, but not limited to the following: wheelchairs, wheelchair ramp, life line support system, TENS unit, crutches, telephone equipped for the hearing impaired or physically disabled if the handicap is the result of the crime. All requests for medical equipment and property alteration must be reviewed and approved by the Deputy Director." (Claimant's Exhibit No. 7.)

A reasonable interpretation of section 912.5 of the Iowa Act would lead to the conclusion that compensation in the State of Iowa could not be awarded because Illinois has a victim compensation program as defined by Federal law. The language in the Illinois Act, section 2(d), pertaining to Illinois residents who are victims in other states

is different and may be interpreted to allow coverage even if the other states' laws did not. However, that issue is not before us now and we do not make that holding here. The fact that Claimant, her counsel or the director of the Iowa program assumed that the State of Illinois would cover the expenses, regardless of what anyone from the Attorney General's office might have said, is not relevant.

This is an unfortunate set of circumstances. It is one that should be addressed by the legislature. The Illinois General Assembly may determine whether the Act should expressly cover the type of compensation sought in this claim. The assistance of the General Assembly could be requested by Claimant by either seeking a pecuniary award or by having the language of the Act revised to permit recovery. We will advise the appropriate members of this decision. We will, however, not make a recommendation.

The Court also finds the manner in which the scope and costs of the work performed was determined to be questionable. The record indicates that third parties determined who the contractors would be, and together with the contractors decided on the scope and costs of the work to be performed. The applicant's participation in the process appears to be minimal and limited to only consenting to the work. In the event public funds are utilized in work performed on real property, it is generally accepted, and required, that agents of the public entity responsible for expending the funds perform a role in the selection of contractors, determination of scope and costs of work, and supervision of the project. This role is recognized in the Iowa Policy Index. (Claimant's Exhibit No. 7.) These safeguards do not exist in this case. Because the Illinois Act does not recognize these expenses, no such

safeguards are established in Illinois. Until the Illinois General Assembly determines that property alterations are permitted, and establishes safeguards for the protection of public funds, awards for property alterations will not be made.

We are mindful of the extremely tragic circumstances and are very sympathetic but we are constrained to follow the law. It is hereby ordered that this claim is denied.